# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

AMVETS POST NO. 2,              )
                               )
    Appellant,          )
                               )
    v.                  )    C.A. No. S22A-03-001 MHC
                               )
THE DELAWARE BOARD OF          )
CHARITABLE GAMING,             )
                               )
                               )
                               )
    Appellee.           )

## OPINION AND ORDER
Submitted: December 22, 2022
Decided: January 12, 2023

*On Appeal from The Delaware Board of Charitable Gaming,*
**AFFIRMED IN PART, REMANDED IN PART.**

Richard E. Berl Jr., Esquire, Hudson, Jones, Jaywork & Fisher, LLC, Lewes, Delaware. *Attorney for Appellant AmVets Post No. 2.*

Kemba S. Lydia-Moore, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware. *Attorney for Appellee the Delaware Board of Charitable Gaming.*

**CONNER, J.**

## INTRODUCTION

Appellant AmVets Post No. 2 ("AmVets") appeals from a decision of the Delaware Board of Charitable Gaming ("the Board"). The Court has reviewed the parties' submissions, the record below, and the relevant law. For the reasons set forth below, the Board's decision is **AFFIRMED IN PART AND REMANDED IN PART.**

## PROCEDURAL BACKGROUND

On November 12, 2020 and April 5, 2021 the State of Delaware filed complaints with the Board against AmVets alleging that AmVets failed to disclose the games it wished to conduct and corresponding rules to the Board, conducted a series of games that were not approved, utilized a progressive jackpot and failed to provide proper documentation in its After Occasion Reports ("AORs"). The complaints allege AmVets violated the statutes and regulations that are applicable to the aforementioned games as well as Article II § 17B of the State Constitution. A hearing officer from the Delaware Division of Professional Regulation ("DPR" or "Division") held hearings on the matters on May 18 and November 29, 2021. The hearing officer found multiple violations were committed by AmVets. The Board adopted the hearing officer's findings and imposed discipline on AmVets.

1

**SUMMARY OF EVIDENCE PRESENTED BELOW**

On May 28, 2018 AmVets, a 501(c)(19) organization located in Millsboro, Delaware, filed an application with the Board to play "Hotshots[1]" at an event in September 2018 (the "first application"). No game rules were included with the application so the Board considered a copy of rules from 2016 that were already on file. The Board granted the first application.

On August 21, 2019 AmVets filed an application to host six games of Hotshots in February 2020 (the "second application"). The Board granted the second application.

The State filed two complaints on November 12, 2020 and April 5, 2021. After multiple days of proceedings before a hearing officer in 2021, the hearing officer issued an extensive Board recommendation on December 31, 2021.

To summarize, the State alleged that AmVets did not follow the approved rules of Hotshots in 2018 and that AmVets committed multiple violations with respect to the February 2020 games, including playing an unapproved game called Mad Dog, impermissibly utilizing progressive jackpots and not properly completing required Board filings.

---

[1] "Hotshots is also known as Flip 5 and is generally played with multiple decks of cards shuffled through machines. The players are dealt five cards face down from the multiple decks, and the dealer flips cards over (one-by-one) from his deck and calls out each card. If the player has the called card it can be then be [sic] turned over. The players race to flip all five cards over, and the winner is the first to flip all five cards over in one hand." Recommendations of Hr'g Officer at 44, Tab D.

On February 23, 2022 the Board issued its decision which adopted the hearing officer's recommendations. Thus, the Board determined as a matter of law that AmVets committed 37 violations of Board Regulations and statutes.[2]

The Board interpreted 28 *Del. C.* § 1521(a) determining that the statute, and in turn the Delaware Constitution, do not allow for progressive jackpots. It is clear that AmVets used progressive jackpots at the February 2020 games[3] and the Board found them in violation of 28 *Del. C.* §1521(a)(1) and (4). The Board also found that AmVets violated 28 *Del. C.* § 1521(b) and Board Regulation 9.1 by not filing proper documentation with the Board relating to the February 2020 games.

Next, the Board concluded that AmVets violated Board Regulation 11.1. The Board agreed with the hearing officer that AmVets was in violation of 11.1 because AmVets' 2019 application did not mention "a 12th game or a Mad Dog or other 'bonus' type game or a progressive jackpot of any kind;" which AmVets in fact played by its own admission.[4] Lastly, the Board found that AmVets violated Board Regulation 11.4.3 in relation to how AmVets disposed of funds from the February 2020 games.

---

[2] Order of the Board of Charitable Gaming dated Feb. 23, 2022, Tab A.
[3] A financial filing from AmVets relating to the February 4, 2020, game of Hotshots contained the words "progressive jackpot." *See* Notice of Appeal Ex. B at 11.
[4] Order of the Board of Charitable Gaming dated Feb. 23, 2022, Tab A.

In total, the Board imposed $37,000 in fines for the aforementioned violations, which is the statutory maximum.[5] The Board cited AmVets' disciplinary history as an aggravating factor.[6] AmVets or any affiliate of AmVets is also currently barred from obtaining any license, permit or other approval issued by the Board.

On March 2, 2022 AmVets appealed to this Court. On March 17, 2022 pursuant to Superior Court Civil Rule 62(c), AmVets filed a motion to stay the penalties below pending appeal to this Court. The motion to stay pending appeal was granted on May 4, 2022.

## STANDARD OF REVIEW

This Court has jurisdiction to hear appeals from the Board pursuant to the Delaware Administrative Procedures Act.[7] The Court's review is "limited to a determination of whether the [Board's] decision was supported by substantial evidence on the record before the [Board]."[8] When factual determinations are at issue the Court must "take due account of the experience and specialized competence of the [Board] and of the purposes of the basic law under which the [Board] has acted.[9] But, if the Court determines that the record is insufficient to support the

---

[5] "The Board may impose a fine upon a licensee for violations of the law or regulations of not more than $1,000 per violation." Here, the Board found 37 violations and imposed $37,000 in fines. *See Del. C*. § 1523.

[6] *See AmVets Post No. 2 v. Delaware Bd. of Charitable Gaming*, 2017 WL 4403333 (Del. Super. Sept. 29, 2017).

[7] 29 *Del. C*. §§ 10102, 10142, 10161.

[8] *United Water Del., Inc. v. Public Serv. Comm'n*, 723 A.2d 1172, 1173-74 (Del. 1999).

[9] 29 *Del. C*. § 10142(d).

Board's conclusions, the Court shall remand the case to the Board for further proceedings on the record.[10]

**DISCUSSION**

A. Applicable Law

The Delaware Constitution prohibits gambling unless it is under certain circumstances. More specifically, Article II, § 17B speaks to lotteries and other gambling events. These types of gambling events are permitted when there is a veterans organization, like AmVets, conducting the games, "provided that the net receipts or profits arising from the conducting or operating of such [gaming events] . . . are used solely for the promotion or achievement of the purposes of such . . . organizations."[11]

The Board is established under Title 28 of the Delaware Code. The Code states that the primary purpose of the Board "is to protect the public through regulations of activities which involve charitable gaming."[12] The Board may also grant or deny applications, conduct investigations (through the Division) and impose penalties upon those who are not in compliance with the law or regulations.[13] "The Board shall

---

[10] 29 *Del. C.* § 10142(c).
[11] Del. Const. art. II, § 17B.
[12] 28 *Del. C.* § 1505(a)
[13] 28 *Del. C.* § 1507

5

prevent the game from being conducted for commercial purposes or private profit other than as authorized in the State Constitution and in this chapter."[14]

The Board must "develop rules and regulations and impose sanctions where necessary against persons or occupational groups regulated by the Board."[15] The rules and regulations that the Board adopts have the force of law.[16] Applicable to the case at hand is the Delaware Constitution, Title 28, Chapter 15 of the Delaware Code and Title 10, Chapter 103 of the Delaware Administrative Code.

B. The Findings of Fact and Conclusions of Law

The hearing officer prepared a voluminous report following the hearing. Some of the findings of fact must be emphasized. Division gaming inspectors Eric Rauch and Ted Kimmey were informed 11 Hotshots games followed by a 12th bonus game called Mad Dog with a progressive jackpot were being played at AmVets in 2017. This led to an inspection occurring on September 21, 2017. When Rauch and Kimmey arrived at AmVets there were game rules sitting on the table that were different than the Board approved rules on file. The 12th Mad Dog game never occurred that day. Rauch filed an initial complaint three days after the inspection on September 24, 2017.

---

[14] 28 *Del. C.* § 1508(a)(2)
[15] 28 *Del. C.* § 1505(b).
[16] *Id.*

6

This initial investigation in September 2017 is what led to the first complaint, #22-03-17, at issue here. Dave Heffline, the Commander of AmVets, sent a letter to the Division of Professional Regulation denying that AmVets was conducting a game that involved a progressive or carryover jackpot. He stated instead that AmVets was occasionally offering this 12th Mad Dog game as a way to generate more interest in the Hotshots game. Heffline was adamant that revised rules allowing for this type of game to be played had been filed with the Board.

The investigation continued in September of 2018. Rauch and Kimmey once again visited AmVets on September 4, 2018 to observe the Hotshots games and to see if the Mad Dog game was being played afterward. Upon their arrival Rauch and Kimmey were given the same rules that had been sitting on the tables during their 2017 inspection, except there was an additional page attached that discussed the Mad Dog game. Rauch and Kimmey observed AmVets applying these rules during the event on September 4, 2018. However, the rules AmVets applied were not the approved rules that were on file with the Board nor were they the rules that Heffline claimed were filed with the Board in 2017.

The hearing officer found there was no evidence to support that the rules Heffline referenced were ever filed with the Board. This conclusion was reached due to the fact that the rules were not located in the Board's licensing drive. Mary Veenema, the Board's liaison, confirmed documents received from licensees are

never deleted nor modified in the licensing drive. Thus, if AmVets had filed a new set of rules in 2017 they would have been saved in the licensing drive. Only after Rauch and Kimmey observed AmVets' gaming event on September 4, 2018 and sent AmVets a Letter of Concern did AmVets then file a new set of rules with the Board.

As of February 26, 2021 there were only two sets of rules on file for the Hotshots games played by Amvets; the original 2016 rules and the rules AmVets submitted after receiving the Letter of Concern. Due to this, the hearing officer concluded that the 2016 rules applied to the Hotshots games played on September 4, 2018.

The second complaint, #22-02-20, is mostly in relation to AORs that AmVets filed pertaining to bi-weekly Hotshots games that occurred in February of 2020. The first AOR was filed on February 4, 2020 and contained a notation between Lines #7(d) and #8(e) that stated "progressive jackpot." Although the remaining AORs submitted by AmVets for the February 2020 Hotshots games did not contain the "progressive jackpot" notation, the hearing officer found that the data and testimony clearly support the fact that a progressive jackpot was occurring week to week.

Line item #7(d) of the AOR form requests "other receipts." No explanation has been provided as to what that means, however, that is where AmVets had listed its progressive jackpots numbers. Other lines on the AOR form request things such

as advertising costs, gaming supply costs and "other" accompanied by "attach description." Once all of the numbers are computed together from items #7 and #8, the net proceeds are entered in item #9. This final amount from item #9 is what is supposed to be donated to charity.

In addition, both Heffline and Tom Jones, another AmVets officer, confirmed that a progressive jackpot was being used. The hearing officer concluded that based on the AORs, the handwritten documents supplied by AmVets and the sworn written and verbal statements made by officers of AmVets, AmVets was conducting Mad Dog games during the month of February 2020 that resulted in a rollover of monies that grew each week.

An important finding of fact regards Mary Veenema's testimony. She testified that she was familiar with both Jones and Heffline as they were officers of AmVets and attended Board meetings regularly. She stated that she recalled seeing the men at the January 26, 2020 Board meeting but she never spoke with them. She further testified that she did not receive any paperwork referring to new rules from them at that time. She explained that she was not authorized to receive any type of document directly from licensees and had made that information known to Heffline and Jones. The hearing officer found that there was no reason for Veenema to be untruthful and that her testimony is credible. The rules on file as of January 2020 only discussed 11

Hotshots games with no mention of a 12th Mad Dog game, any other type of "bonus" game or jackpot of any kind.

The hearing officer also took account of the fact that Heffline admitted in a letter from October 2017 that, "[w]e are aware of the Board's decision last summer that progressive jackpots are not permitted. Although we disagree, if the time comes for us to test that ruling, we will do so in a proper manner . . ."[17]

Based on the hearing officer's findings of fact, she went on to make numerous conclusions of law. First, she concluded as a matter of law that AmVets violated Board Regulation 11.1 by not providing a list of games and the corresponding rules for the games that were going to be conducted in the 2018 application for the gaming permit.

Next, the hearing officer concluded that AmVets violated 28 *Del. C.* § 1521(a)(1) and (a)(4) in each of the six games that it conducted in February of 2020. She established this because the word "each" was used in the statutes, and by using that word the drafters did not contemplate nor permit a progressive jackpot.

The hearing officer also concluded that AmVets violated 28 *Del. C.* § 1521(b) and Board Regulation 9.1. She found that because AmVets failed to provide receipts for gaming supplies, documents showing payments for professional services, or any

---

[17] Admin. Hr'g Record Tab G, State's Ex. 2 at 2.

record of the charitable contributions it made as a result of the February 2020 Hotshots games. AmVets failed to do so in response to a validly issued subpoena.

The hearing officer next concluded that AmVets violated Board Regulation 11.1 for the six Hotshots games that occurred in February of 2020. This is due to the fact that there were no revised or new rules filed by AmVets in regard to adding a Mad Dog Bonus to the end of the Hotshots games. AmVets acknowledged that it conducted this extra "bonus" type game with a progressive jackpot.

Finally, the hearing officer concluded as a matter of law that AmVets violated Board Regulation 11.4.3 for the six Hotshots games that were conducted in February of 2020. She reached this conclusion based upon AmVets failing to dispose of the proceeds from the games conducted in February of 2020 in accordance with the State Constitution and statutes.

The Board is authorized by statute to impose fines of up to $1,000 per violation of any statute or regulation.[18] The Board accepted the hearing officer's findings of fact and conclusions of law and ordered in relevant part as follows:

> 1. AmVets be fined $1,000 for a single violation of Board Regulation 11.1 on September 4, 2018;

---

[18] 28 *Del. C.* § 1523.

11

2. AmVets be fined $1,000 for violations of 28 *Del. C.* § 1521(a)(1) and (4) during each of the six games played in February 2020 for a total of 12 violations and $12,000 in fines;

3. AmVets be fined $1,000 for violations of 28 *Del. C.* § 1521(b) and Board Regulation 9.1 during the six games played in February 2020 for a total of 12 violations and $12,000 in fines;

4. AmVets be fined $1,000 for violations of Board Regulation 11.1 during the six games played in February 2020 for a total of six violations or $6,000 in fines;

5. AmVets be fined $1,000 for violations of Board Regulation 11.4.3 during the six games played in February 2020 for a total of six violations or $6,000 in fines;

6. AmVets and its affiliates shall be barred from obtaining any license, permit, or other approval issued by the Board until the full payment of the fine amount, or until February 23, 2023.[19] This includes any subsidiary organizations, parent organizations, and any other organization having a common parent organization or otherwise affiliated with AmVets. AmVets and its affiliates shall be barred

---

[19] As of now, the fines and bar on obtaining permits is currently not applicable due to the Stay granted by this Court on May 4, 2022.

12

when the Board or Division believe the circumstances of the request warrant such action.

C. The Arguments

On appeal Amvets argues:

1. The Board erred in concluding that AmVets violated 28 *Del. C.* § 1523 and Regulation 11.1;

2. The Board erred in concluding that AmVets violated 28 *Del. C.* § 1521 and the associated regulations;

3. A progressive jackpot is not prohibited by the Delaware Constitution; and

4. The penalties imposed by the Board are illegal and far exceed the scope of any violations.

D. Court's Findings and Conclusions

*1. Violation of Board Regulation 11.1 – 2018 Application*

AmVets argues that the Board erred in concluding that AmVets failed to disclose the games that would be played during the 2018 Hotshots events. More specifically, the issue is that AmVets did not file an updated set of rules with the

Board for the Mad Dog game that it wished to conduct. When gaming inspectors Rauch and Kimmey observed the Mad Dog game being played at AmVets in 2018 it was clear it was not permitted because the current rules on file did not allow for such a game to be played. Since a new set of rules did not accompany AmVets' 2018 application for gaming permits, the 2016 rules on file were still applicable.

Board Regulation 11.1 states, "[a]ll applications for a license to conduct a Function shall be submitted on a form approved by the Board. The information supplied must include . . . a list of games to be conducted . . . ." AmVets violated this regulation by not including the Mad Dog game and accompanying rules on the application.

The Board's conclusion that AmVets failed to disclose the appropriate information regarding the games to be played in 2018 is supported by substantial evidence and free from legal error. The Board's decision regarding AmVets' violation of Board Regulation 11.1 is **AFFIRMED.**

> 2. *Violation of 28 Del. C. § 1521 and Associated Regulations – 2019 Application*

The violations discussed in this subsection pertain to the games conducted in February 2020. The Board concluded AmVets was in violation of 28 *Del. C.* §§ 1521(a)(1), 1521(a)(4) and 1521(b). Additionally, the Board found AmVets in violation of Board Regulations 9.1, 11.1, and 11.43.

i.      <u>28 *Del. C.* §§ 1521(a)(1) and 1521(a)(4)</u>

28 *Del. C.* § 1521 states in relevant part,

> (a) Within 30 days after the conclusion of any game, the organization which conducted the game and its member or members who were in charge shall furnish to the Board a duly sworn statement showing:
> (1) The gross receipts derived from each game;
>
> (4) The net profit derived for each such game.[20]

The Board concluded that since AmVets was conducting games with a progressive jackpot that rolled monies over each week 28 *Del. C.* § 1521(a)(1) was violated. The violation occurred because the gross receipts submitted on the AOR included rolled over monies, meaning those monies were not derived from each individual game played. Additionally, the Board concluded that 28 *Del. C.* § 1521(a)(4) was violated because the net profits stated in the AOR reports included monies from the progressive jackpots, meaning profits made from more than one specific game.

Although the Court acknowledges that the monies raised from each game need not be donated to charity *immediately* after the conclusion of the game, the donation amount must be properly delineated on the AOR that is sent to the Board within 30 days.[21] Here, the amount to be donated to charity from each gaming event could not be deciphered due to AmVets listing profits from multiple games on one AOR.

---

[20] 28 *Del. C.* §§ 1521(a)(1), 1521(a)(4).
[21] 28 *Del. C.* § 1521(a); *see also AmVets Post No. 2*, 2017 WL 4403333, at *9.

15

The Court is not convinced there is substantial evidence in the record to support the conclusion that progressive jackpots are illegal when accompanying this type of charitable gaming event. This is due to the Court being uncertain as to whether Mad Dog was a "free game" not subject to the Board's authority or other game, such as a lottery or a raffle, permitting progressive jackpots. Based on the record, the Court is unable to determine whether these games were unconstitutional. There must be a clear finding from the Board as to the nature of the Mad Dog game and why this game violated these sections of the code. Accordingly, the Board's conclusions do not withstand appellate review and the findings regarding the violations of 28 *Del. C.* §§ 1521(a)(1) and 1521(a)(4) must be **REMANDED.**

ii.     28 *Del. C.* § 1521(b) and Board Regulation 9.1

28 *Del. C.* § 1521(b) states, "[e]ach licensee shall maintain the records to substantiate the particulars of the reports."[22] Board Regulation 9.1 is similar, stating "[a]ccurate records and books shall be kept by each Sponsoring Organization including but not limited to detailed financial reports of the amount and source of

---

[22] 28 *Del. C.* § 1521(b).

16

proceeds, the members participating in the promotion and/or operation of the Function, all expenses and disbursements."[23]

The Board found that AmVets failed to supply receipts for gaming supplies, receipts for payments of professional services, or any record of charitable contributions paid out as a result of the February 2020 Hotshots games, despite a validly issued subpoena for these records.[24] The failure to supply the aforementioned documentation puts AmVets in violation of both 28 *Del. C.* § 1521(b) and Board Regulation 9.1. The Board's conclusion regarding these two violations is supported by substantial evidence and free from legal error. Therefore, the violations of 28 *Del. C.* § 1521(b) and Board Regulation 9.1 are **AFFIRMED.**

### iii.    Board Regulation 11.1

Board Regulation 11.1 states in relevant part, "[a]ll applications for a license to conduct a Function shall be submitted on a form approved by the Board. The information supplied must include . . . a list of the games to be conducted . . . ."[25]

---

[23] 10 *Del. Admin. C.* §103-9.1.
[24] The only records AmVets provided were handwritten documents that described how AmVets collected, paid out, and carried over its monies on the weekly Hotshots games.
[25] 10 *Del. Admin. C.* §103-11.1.

The rules on file at the time of the 2019 application only mentioned 11 Hotshots games and did not discuss a 12th Mad Dog game.[26] The Board concluded AmVets did not acknowledge a Mad Dog or other bonus type game on the 2019 application. Since the Mad Dog game was not listed on the application as a game that was going to be conducted, AmVets violated Board Regulation 11.1.

The Board's conclusion that AmVets violated Board Regulation 11.1 for the February 2020 games is supported by substantial evidence and free from legal error. Accordingly, the violation of Board Regulation 11.1 is **AFFIRMED.**

### iv. Board Regulation 11.4.3

Board Regulation 11.4.3 states "[t]he proceeds are to be disposed of as provided in the State Constitution and statutes."[27] The Board concluded that AmVets rolled monies over from week to week, in other words used a progressive jackpot. As previously discussed, the Court finds there is not substantial evidence in the record to support the conclusion that a progressive jackpot is illegal in Delaware. Again, the Board must make a clear finding as to the nature of the Mad Dog game and why this game violated this regulation. Accordingly, the Board's conclusion

---

[26] Mary Veenema testified about what rules were on file and the process for storing and updating game rules in the Board's system. Veena was deemed credible by the hearing officer.

[27] 10 *Del. Admin. C.* §103-11.4.3.

18

does not withstand appellate review and the findings regarding the violation of Board

Regulation 11.4.3 must be **REMANDED.**

*3. Penalties*

The Board imposed two sanctions on AmVets. First, it imposed fines totaling

$37,000 for the 37 violations of the statutes and Board Regulations. As previously

mentioned, the Board is permitted, by statute, to impose a fine of up to $1,000 per

violation. Second, AmVets and its affiliates are barred from obtaining any licensure,

permit, or other approval by the Board.[28]

AmVets contends that the penalties imposed are excessive and

disproportionate to any actual violations. However, with regard to penalties imposed

by boards and agencies:

> [t]he choice of a penalty by an administrative agency is a matter of
> discretion to be exercised solely by the agency, as long as it is based on
> substantial evidence and not outside of its statutory authority. In
> reviewing the penalty imposed by the Board, the question for the Court
> is not whether this Court would have imposed the same penalty as what
> was imposed by the Board, but whether such punishment is so
> disproportionate to the offense in light of all the circumstances as to be
> shocking to one's sense of fairness.[29]

---

[28] *Supra* note 19.
[29] *Villabona v. Board of Med. Practice*, 2004 WL 2827918, at *7 (Del. Super. Apr. 28, 2004).

Here, the hearing officer cites AmVets past disciplinary record as an aggravating factor in support for recommending the maximum fines.[30] The Board unanimously agreed with the recommended discipline.[31]

Although the Board is authorized to impose a $1,000 fine for each violation of a statute or Board Regulation, the Court takes notice of AmVets being punished for the same conduct via both statute and Board Regulation resulting in a perceived double jeopardy of fines. Additionally, it appears to the Court that the Board does not have the authority to impose penalties on unnamed and unknown affiliates of AmVets. This possibly violates due process for these affiliates.

Since the Court has remanded the Board's decisions on multiple violations for lack of substantial evidentiary support, it is possible the penalties assessed to AmVets will change. Therefore, the Court cannot affirm the penalties as currently assessed to AmVets and its unnamed and unknown affiliates. Accordingly, the Board's decision regarding the disciplinary action taken against AmVets is **REMANDED FOR FURTHER CONSIDERATION CONSISTENT WITH THIS OPINION.**

---

[30] *See AmVets Post No. 2,* 2017 WL 4403333.
[31] Order of the Board of Charitable Gaming, dated Feb. 23, 2022, Tab A.

## CONCLUSION

For the reasons stated above, the Court finds portions of the Board's decision to be free from legal error and supported by substantial evidence. The Court is satisfied there is substantial evidence to support the findings of AmVets Post No. 2 violating 10 *Del. Admin. C.* § 103-11.1 in relation to the 2018 application and 28 *Del. C.* § 1521(b) and 10 *Del. Admin. C.* §§ 103-9.1, 103-11.1 in relation to the 2019 application and therefore, **AFFIRMS**. All other violations of the statutes and Board Regulations are **REMANDED TO THE BOARD FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**IT IS SO ORDERED.**

/s/ *Mark H. Conner*

Mark H. Conner, Judge

cc: Prothonotary

21